UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│ USDC SDNY                                │
│ DOCUMENT                                 │
│ ELECTRONICALLY FILED                     │
│ DOC #:_____                  │
│ DATE FILED: 03/01/24                     │
└─────────────────────────────────────────┘
```

ANTONIA PHILLIPS, et al.

                    Plaintiffs,

          - against -

CITY OF NEW YORK, et al.

                    Defendants,

03 Civ. 4887 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Before the Court is a letter motion (see Dkt. No. 431 [hereinafter the "Motion"]) from nonparty Orange Bank & Trust Co. ("Orange Bank" or the "Bank") to vacate this Court's January 22, 2024 Order (see Dkt. No. 430 [hereinafter the "Order"]) approving the recommendation of guardian ad litem Harry Rimm ("Rimm" or the "Guardian ad Litem")) to replace Orange Bank as Trustee of the Henesy Feliz (f/k/a Antonia Phillips) Supplemental Needs Trust (the "Trust"). Shortly after the Bank filed its Motion, the Court stayed effect of the Order pending consideration and decision on the Bank's Motion. For the reasons stated below, the Motion is **DENIED** and the January 22, 2024 Order is hereby reaffirmed and reinstated.

## I.   BACKGROUND

In 2002, Henesy Feliz ("Henesy") sustained brain trauma while in the custody of a New York City foster care facility.

Her injuries rendered her totally disabled for the rest of her life. This civil action was then brought on behalf of Henesy (then known as Antonia Phillips), alleging that the City of New York (the "City") and certain co-defendants had caused Henesy's permanent disabilities.

The City and its co-defendants were found liable at a jury trial before this Court in March 2007. Shortly thereafter, the parties reached a settlement agreement as to the damages to be awarded to Henesy. Because of Henesy's age and disability, it was necessary for those damages to be paid to the Trust, established for Henesy's benefit and managed by a responsible trustee. In accordance with the settlement, funds from the City and its co-defendants were paid over time to the Trust, which has disbursed funds for Henesy's care and benefit as requested on Henesy's behalf by her adoptive mother and primary caregiver, Griselda Feliz ("G. Feliz") through Rimm, the guardian ad litem appointed by the Court to serve in that capacity.

As this litigation proceeded on behalf of Henesy in federal court, a state court terminated the parental and guardianship rights of Henesy's natural parents in late 2006. (See Dkt. No. 112.) By letter dated December 19, 2006, the parties then requested that the Court appoint a guardian ad litem to represent the interests of Henesy in the federal

litigation. (<u>See</u> <u>id.</u>) In response, the Court on February 2, 2007, appointed Rimm. (<u>See</u> <u>id.</u>) No party objected to Rimm's appointment as interim Guardian ad Litem, and the Court determined that Rimm had no interest adverse to Henesy. (<u>See</u> <u>id.</u>) The Court reappointed Rimm as the permanent Guardian ad Litem for Henesy on August 28, 2008. (<u>See</u> Dkt. No. 139.) Again, no party objected to Rimm's appointment as permanent Guardian ad Litem, and the Court was satisfied that Rimm still had no interest adverse to Henesy. (<u>See</u> <u>id.</u>)

In his capacity as Guardian ad Litem, Rimm was the settlor of the Trust and at all relevant times has supervised administration of the Trust for Henesy's benefit. (<u>See</u> <u>id.</u>; <u>see</u> <u>also</u> Dkt. No. 195-2 [hereinafter the "Trust Agreement"].) The position of Trustee, which manages and disburses the Trust's funds upon the Guardian ad Litem's requests and with the Court's approval, has been held by several different companies over the course of the Trust's existence. At least three times, responding to requests by the Guardian ad Litem, the Court has appointed a successor Trustee upon the resignation or removal of a prior Trustee. (<u>See</u> Dkt. Nos. 152, 211, 260.)

Orange Bank is the latest company to serve as Trustee, beginning its tenure in 2017. (<u>See</u> Dkt. No. 260.) As reported by the Guardian ad Litem, Orange Bank had suggested it would

resign as Trustee because of antagonism between Bank
personnel and G. Feliz. (See Guardian ad Litem's Opposition
to Orange Bank's Motion, Dkt. No. 435 [hereinafter "Opp."] at
2-3.) The Court has been aware of these circumstances, as
reported by the Guardian ad Litem, G. Feliz, and Orange Bank
in conferences and correspondence with the Court since
approximately 2019. During the summer of 2019, the search for
a successor Trustee became necessary when Orange Bank advised
the Guardian ad Litem and the Court that key Orange Bank
employees staffed to the Trust's account would resign later
that year, and that the Bank would not continue its business
with the Trust. (See id.; see also Dkt. No. 429.)[1]

As anticipated, two key Orange Bank employees assigned
to work on the Trust resigned in September 2023. Changing its
position, Orange Bank officers then expressed interest in
continuing to service the Trust's business, and the Guardian
ad Litem agreed that he would not request removal of Orange

---

[1] Orange Bank does not deny that multiple conversations with the Guardian
ad Litem occurred, nor does it argue that those conversations happened
differently than the Guardian ad Litem reported. Rather, Orange Bank views
the Guardian ad Litem's description of these conversations as "clearly
impermissible hearsay based upon purported exchanges with the Bank and
its officers." (Orange Bank's Reply in Further Support of its Motion,
Dkt. No. 436 [hereinafter the "Reply"] at 2.). The hearsay point is
inapposite, since the matter at issue does not implicate the Rules of
Evidence, as it does not arise in the context of a trial, or even a
hearing. See Fed. Rule of Evid. 1101 (discussing applicability of the
Rules of Evidence); see also Rein v. Socialist People's Libyan Arab
Jamahiriya, 568 F.3d 345, 354 (2d Cir. 2009) (allowing a District Court
discretion to decide certain matters summarily on the papers without a
hearing) (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

Bank as Trustee upon assurances that if Orange Bank remained as Trustee there would be no impact on the Bank's service to the Trust. (See Opp. at 3.) In November 2023, the Guardian ad Litem had become dissatisfied with the Bank's service performance and spoke with Orange Bank officers again to request improvements in service. (See id.) Having seen no improvement in service by January 2024, the Guardian ad Litem advised Orange Bank that he would request the Court to appoint a new Trustee. (See id.) Orange Bank denies that it ever provided poor service to the Trust. (See Mot. at 4.)

Within two weeks, the Guardian ad Litem filed a letter requesting that the Court order replacement of Orange Bank as Trustee and approve the appointment of a successor Trustee. (See Dkt. No. 429.) The Court on January 22, 2024, granted the Guardian ad Litem's request, directing Orange Bank to cooperate with the Guardian ad Litem to ensure a smooth transition to the newly appointed Trustee. (See Order.)

Orange Bank filed its Motion on January 31, 2024. The next day, the Court stayed the effect the Order and directed the Guardian ad Litem to respond to the matters set forth in the Motion. (See Dkt. No. 432.) The Court received the Guardian ad Litem's response on February 9, 2024 (see Opp., Dkt. No. 435), and the Bank's Reply on February 14, 2024 (see Reply, Dkt. No. 436). Separately, the Court received and

considered a letter from G. Feliz, dated February 1, 2024. (See Dkt. No. 437.)

## II.  DISCUSSION

Orange Bank raised several arguments in support of its Motion to vacate the Court's Order: (1) that the Guardian ad Litem's application to replace the Bank was ex parte and without notice, and without an opportunity for Orange Bank to be heard; (2) that the Court's Order did not set forth a basis for its decision; (3) that the Guardian ad Litem acted without proper authority; and (4) that this Court did not have subject matter jurisdiction to remove and replace Orange Bank as Trustee. (See Mot. at 3-7.) The Bank further argues that the Guardian ad Litem's request, and the Court's prompt approval of that request, resulted in a "denial of procedural and substantive due process." (Mot. at 2; Reply at 2.)

The Court pauses to note at the outset that the points raised in Orange Bank's Motion are disingenuous — particularly Orange Bank's attempt to portray itself as blindsided by the Court's Order naming a successor Trustee. Before it retained counsel to challenge the Court's Order, Orange Bank supported the plan to transition the Trust to a

successor. Indeed, initially it was Orange Bank's idea. (See
Opp. at 2; see also Dkt. No. 429.)

Only after the Guardian ad Litem had begun looking for
a suitable replacement did Orange Bank resist the Guardian ad
Litem's proposed course and file its Motion. And while Orange
Bank goes to great length to suggest that it and G. Feliz
have been deeply wronged by the Court's Order, Orange Bank
does little to acknowledge the interests of the Trust's one
legal beneficiary: Henesy Feliz.

The Court now duly considers Orange Bank's points and
arguments.

A.   SUBJECT-MATTER JURISDICTION

The Court first addresses Orange Bank's argument that
the Court does not have subject matter jurisdiction to oversee
the Trust. As always, "[d]etermining the existence of subject
matter jurisdiction is a threshold inquiry." Morrison v.
Nat'l Australia Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008).

The United States Supreme Court has held that a federal
court has inherent power to "manage its proceedings,
vindicate its authority, and effectuate its decrees."
Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 380
(1994); see also Peacock v. Thomas, 516 U.S. 349, 354 (1996)
(permitting a federal court to exercise so-called "ancillary
jurisdiction" to "effectuate its decrees"). "Without

7

jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." Peacock, 516 U.S. at 356 (quotation marks and citation omitted).

The existence and proper functioning of the Trust is essential to the just disposition of this federal litigation. The Trust is the mechanism through which Henesy receives the benefits of the relief she was awarded to remedy her injuries from defendants' wrongful conduct. At the time this case settled, Henesy was a minor. She was expected to — and has continued to — suffer lifelong disabilities as a result of the injuries that led to this litigation. Her natural parents could not stand in to receive the settlement for their daughter because their parental and guardianship rights had been terminated by the City. In these circumstances, the Court and the parties needed a way to ensure that Henesy received what was due to her. Accordingly, the Court ordered the creation of the Trust to receive the settlement amount and disburse it to Henesy as needed for her care and comfort. The ongoing oversight of the Court has been necessary to effectuate the purpose of the Trust and thus to effectively

perform the functions of the Court in the administration of justice.

Orange Bank contends that the Court's jurisdiction over the Trust ended when the Trust became fully funded and the City and its co-defendants satisfied their obligations under the settlement agreement.[2] (See Mot at 6.) It is true that, ordinarily, a District Court does not retain jurisdiction to adjudicate a dispute arising from a settlement agreement simply by virtue of having disposed of the original case. See Kokkonen, 511 U.S. at 381-82; Hendrickson v. United States, 791 F.3d 354, 358 (2d Cir. 2015). Rather, the Court must expressly retain jurisdiction to resolve disputes that arise from a court-approved settlement, either by expressly stating as much in the dismissal order or by incorporating the terms of the settlement agreement in the dismissal order. See Kokkonen, 511 U.S. at 380-81; Hendrickson, 791 F.3d at 358.

As an initial matter, the Court is satisfied that it expressly retained jurisdiction to decide matters concerning the Trust. The order of dismissal in this case incorporates the detailed terms of the parties' agreement and authorizes

---

[2] For clarity of the record, though Orange Bank contends that diversity of citizenship was "the predicate for subject matter jurisdiction" (Mot. at 6), diversity is not and never was the basis of the Court's jurisdiction over this case. Nor could it have been: all parties to the original litigation were citizens of New York. Rather, this Court exercised jurisdiction pursuant to 28 U.S.C. § 1331 because Henesy brought one of her claims against the City and its co-defendants under 42 U.S.C. § 1983, thereby implicating a federal question.

the existence of the Trust. (See Dkt. No. 134.) Consistent with that Order, the Trust Agreement expressly acknowledges that this Court "shall have continuing jurisdiction" over all matters related to the Trust, including the appointment of a successor Trustee. (See Trust Agreement § 4.8.)

Even if there were doubt that the Court expressly retained jurisdiction over the Trust, the express-retention rule of Kokkonen does not apply to matters relating to the Trust, which is effectively a settlement fund established for Henesy's benefit. Though a court must expressly retain jurisdiction to hear an action between two parties for breach of a settlement contract, as in Kokkonen, the circumstances are different when the Court administers settlement monies that a liable defendant has already paid. See Grimes v. Chrysler Motors Corp., 565 F.2d 841, 844 (2d Cir. 1977); see also Chesley v. Union Carbide Corp., 927 F.2d 60, 65 (2d Cir. 1991) (acknowledging a federal court's power to "supervis[e] the distribution of a settlement fund that remains within its jurisdiction"); Brettschneider v. City of N.Y., 15 Civ. 4574, 2020 WL 5984340, at *7-8 (E.D.N.Y. Aug. 25, 2020) (collecting cases).

The law draws this distinction because an allegation that a party has breached a settlement contract threatens to impose new liability on that party. See Peacock, 516 U.S. at

356-57; Grimes, 562 F.2d at 844; Chesley, 927 F.2d at 65. By comparison, no new liability is threatened where the Court involves itself in the administration of property (as in this case, the funds deposited in the Trust) that a defendant already relinquished to a successful plaintiff pursuant to the Court's authority to render judgment. See Chesley, 927 F.2d at 65; Brettschneider, 2020 WL 5984340, at *7; cf. Peacock, 516 U.S. at 356 (emphasizing the "broad range" of powers at a federal court's disposal to administer property subject to its control).

Here, the Court's role falls outside the ambit of Kokkonen's rule limiting federal jurisdiction because the Court's actions with respect to the Trust do not threaten to impose liability on anyone. After having been found liable in this Court, the City and its co-defendants satisfied their obligation to Henesy by funding the Trust. The Court's role is simply to oversee disbursements from the Trust, as the parties envisioned and to which all parties consented. Accordingly, the Court finds that subject matter jurisdiction exists here to resolve the issue concerning appointment of a new Trustee.

B.   DUE PROCESS

Having first addressed the threshold issue of subject matter jurisdiction, the Court now turns to the procedural

concerns raised by Orange Bank. The Court's replacement of the Trustee did not violate either Orange Bank's or G. Feliz's Due Process rights in any respect.[3]

A Due Process violation occurs when there is "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." Bryant v. N.Y. St. Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012).

### 1.   Existence of a Cognizable Property Interest

"To determine whether a constitutionally cognizable property right is implicated, we look to whether the interest involved would be protected under state law and then we weigh the importance to the holder of the right." Progressive Credit Union v. City of New York, 889 F.3d 40, 51 (2d Cir. 2018). "To show such a protected interest, a plaintiff must demonstrate more than an 'abstract need or desire' for the matter at issue, or a 'unilateral expectation' as to its receipt. Rather, a plaintiff must establish 'a legitimate claim of entitlement,' one 'created and . . . defined by existing rules or understandings that stem from an

---

[3] Orange Bank refers in passing to the Court's actions denying "substantive due process to both the Trustee and the mother of the incapacitated child" (Mot. at 2; Reply at 2), but its specific concerns are all procedural in nature. The Motion does not specify what actions of the Court constitute substantive due process violations, and the Court cannot identify any action that would have amounted to such a violation. Accordingly, the Court focuses on procedural Due Process.

independent source,' including, as pertinent here, state law." Ace Partners LLC v. Town of East Hartford, 883 F.3d 190, 195 (2d Cir. 2018) (citations omitted).

Orange Bank and G. Feliz do not clearly identify a property interest implicated by the Court's Order, let alone demonstrate an entitlement to such an interest sufficient to trigger Due Process concerns. Charitably read, their submissions appear to assert property interests in (1) fees to Orange Bank for services rendered as Trustee, and (2) G. Feliz's remainder interest in the Trust. The question is then whether either Orange Bank or G. Feliz can demonstrate legal entitlement to these property interests. Orange Bank and G. Feliz suggest that the Trust Agreement or New York law creates a legally cognizable entitlement. The Court must reject those suggestions.

a.   Trust Agreement

The Trust Agreement does not create a property interest for Orange Bank to serve as Trustee or for G. Feliz. With respect to the Bank, the only entitlement created by the Trust Agreement is for "compensation" for services rendered, plus "reimbursement for reasonable expenses incurred in administration of" the Trust. (Trust Agreement § 4.3.) There is no indication that the challenged Court Order will deprive the Bank of compensation for services rendered or

13

reimbursement for expenses incurred to date; the Court's Order simply directs a different bank to serve as Trustee in the future.

With respect to G. Feliz, there is no mention of her in the Trust Agreement at all. The Bank's position is that the Guardian ad Litem's actions jeopardize the "Remainder Interest of the Mother and Natural Guardian," (Mot. at 6) but the Bank's assertion is imprecise. Under the terms of the Trust and the state statute by which the Trust was created, various New York state and city agencies have priority to receive the balance of the Trust assets at Henesy's death (to reimburse the state and city for expenses related to Henesy's care), and only then does the balance of the Trust flow into Henesy's estate. (See Trust Agreement § 3.3.) Thus, upon Henesy's death, G. Feliz would receive the remainder amount of the Trust only if (1) the amount of principal and accumulated interest in the Trust exceeds the claims of the relevant state and city agencies, and (2) G. Feliz is a beneficiary of Henesy's estate, a circumstance which cannot be determined until the time of Henesy's death.

Due Process protects only vested property interests, not future expectancies or property interests contingent on future events like G. Feliz's here. See Weaver v. Graham, 450 U.S. 24, 29-30 (1981) ("Evaluating whether a right has vested

is important for claims under the Contracts or Due Process Clauses, which solely protect pre-existing entitlements."); Christian v. Ontario County, 92 Misc. 2d 51, 53 (N.Y. Sup. Ct. Ontario Cnty. 1977) ("A right is a property right within the meaning of the 5th and 14th Amendment to the United States Constitution when it is a vested right. . . . A vested right cannot be contingent nor a mere expectance of a future benefit.").

    b.  New York Law

New York law likewise does not create a property interest for Orange Bank or for G. Feliz. Matters relating to the Trust must be decided in accordance with New York law (see Reply at 2; see also Trust Agreement § 5.1), and the Bank points to New York Surrogate's Court Procedure Act § 711, which sets forth bases for which a Trustee can be removed by the Court (see Mot. at 4).[4] However, § 711 does not exist to protect a trustee from dismissal — rather, § 711 protects the interests and wishes of the trust's settlor to choose a trustee, and it protects the interests of the trust itself. See In re

_____

[4] The Court assumes, without deciding, that § 711 supplies the rule of decision for removal of a trustee in this case and therefore focuses its analysis on § 711. However, the Court notes that a different provision of New York law permits a court to remove a trustee "[o]n the application of any person interested in the trust" on a far more discretionary standard than § 711: if the trustee "for any reason is a person unsuitable to execute the trust." N.Y. Est. Powers & Trusts Law § 7-2.6; see also 106 N.Y. Jur. 2d Trusts § 303. Under either New York statute, the Court's conclusion would be the same.

_Petrocelli_ 763 N.Y.S.2d 74, 74 (N.Y. App. Div. 2d Dept. 2003)
(noting that removal of a fiduciary is sparingly ordered
because it often nullifies the _settlor's_ choice of trustee);
_id._ (a court may remove a fiduciary to protect "the safety of
the estate"); _Met. Trust Co. of the City of N.Y. v. Stallo_,
152 N.Y.S. 183, 183 (N.Y. App. Div. 1st Dept. 1915) ("A
proceeding to remove an administrator is not one to punish
him, but to protect the estate.").

The financial interests of the Trustee or the
remaindermen are not considerations in the § 711 analysis at
all, and indeed New York law permits dismissal of a trustee
in certain circumstances without _any_ notice when necessary to
protect a trust and its beneficiaries. _See_ N.Y. Surr. Ct.
Proc. Act § 719. It is not a fair reading of § 711 to state
that it creates a protectible property right for any trustee
to continue serving in that role.

The Court finds that neither Orange Bank nor G. Feliz
have any property interests protected by procedural Due
Process.

2.  _Deprivation Without Process_

Even if a cognizable property interest existed, the
requirements of Due Process have likely been satisfied here.
Due Process requires "adequate notice and a meaningful
opportunity to be heard." _In re Purdue Pharma, L.P._, 69 F.4th

16

45, 82 (2d Cir. 2023). The Court satisfied the requirements of Due Process, notwithstanding the prompt action on the Guardian ad Litem's request, because it stayed the effect of the Order and closely considered the Bank's detailed letter briefing before issuing this final ruling.

Notice must be "reasonably calculated . . . to apprise interested parties of the pendency of the action." Id. at 83. "There is no rigid formula as to the kind of notice that must be given; notice required will vary with circumstances and conditions." Id. Though it is challenging to identify a factually analogous case, the Guardian ad Litem explains that Orange Bank and G. Feliz, initially on or about July 28, 2023, were apprised of Rimm's intent to request appointment of a new Trustee because Orange Bank at the time intended to resign. (See Opp. at 2-3.) Rimm gave additional notice in January 2024 shortly before making his formal request. (See id.) Giving notice to G. Feliz was a courtesy (not a requirement), because she is not formally related to the Trust. Still, Rimm represents to the Court that he nonetheless provided notice to G. Feliz by phone. (See id.)

Relatedly, the Guardian ad Litem's request was not ex parte, despite Orange Bank's characterizations to the contrary. As already explained, the Guardian ad Litem represents that at all relevant times Orange Bank and G. Feliz

had advance notice of the Guardian ad Litem's intentions, including notice of requests that would be made with the Court. This action goes beyond what was legally required. Orange Bank and G. Feliz are not active parties in the underlying litigation that led to the creation of the Trust, and therefore service to them is not mandatory under Federal Rule of Civil Procedure 5(a), which requires service only to "parties" in an action. Moreover, the Guardian ad Litem's request was filed publicly and was accessible to any member of the public. Orange Bank was free at any time to file an opposition to the Guardian ad Litem's request, which it eventually did by filing the instant Motion.

Orange Bank's more forceful contention is that it never received an opportunity to raise substantive arguments opposing appointment of a successor Trustee. Due Process requires that each "affected individual has had a fundamentally fair chance to present his or her side of the story." Rein v. Socialist People's Libyan Arab Jamahiriya, 568 F.3d 345, 354 (2d Cir. 2009). Due Process also requires an adjudicator to explain its reasoning, assuming that the reasoning is "not obvious." Mildred Elley Business Sch., Inc.

v. Riley, 975 F. Supp. 434, 440 (N.D.N.Y. 1997); see also
Goldberg v. Kelly, 397 U.S. 254, 271 (1970).

The Bank claims that, if given an opportunity to be
heard, it would argue that (1) it provided satisfactory
service to the Trust, (2) unsatisfactory service is a legally
insufficient basis for dismissal of a Trustee under New York
law, and (3) the Guardian ad Litem had no authority to request
dismissal of Orange Bank. The Court briefly considers these
arguments to ensure that Orange Bank's substantive positions
have been fairly considered.

First, concerning whether Orange Bank's service as
Trustee was satisfactory: the Court has long been aware of
Orange Bank's difficulties in administering the Trust and
working with G. Feliz, through reports from the Guardian ad
Litem and through direct communication with the officer of
the Bank handling the account. The Court is also aware, as
indicated above, that the Bank has had recent difficulty
staffing the Trust. This concern constitutes sufficient basis
for the Court to endorse the Guardian ad Litem's

recommendation that Orange Bank's service was not satisfactory.[5]

Second, unsatisfactory service, as described in the Guardian ad Litem's submissions, provides sufficient ground to dismiss and replace a Trustee. New York law governs the administration of the Trust (see Trust Agreement § 5.1); accordingly, the Court looks to §§ 711 and 719 of the Surrogate's Court Procedure Act to supply the relevant substantive legal standards. Those sections, in turn, enumerate myriad bases for which the Court can act to dismiss a trustee to protect the Trust, and it has been long settled that the Court has wide discretion to make such a decision. See Stolz v. N.Y. Central R. Co., 164 N.E.2d 849 (N.Y. 1959). Removal of Orange Bank was permissible under the circumstances. A trustee who unreasonably delays in administering the trust can be removed as "improvident" under § 711(2) and § 711(8). See Matter of Shambo, 94 N.Y.S.3d 690,

---

[5] Relatedly, Orange Bank calls the Guardian ad Litem's representations "hearsay" (Reply at 2) and complains that "no sworn supporting affidavit[] under the penalties of perjury" (Mot. at 5) supported the Guardian ad Litem's application, implying that the Court's factfinding process should have been more formal. In these circumstances, Orange Bank is not entitled to formalized factfinding, like a hearing or sworn testimony. Attorneys' representations to the Court here are enough. See Rein, 568 F.3d at 354 ("[T]he requirement of 'some form of hearing' does not necessarily require an evidentiary hearing at which testimony is taken."); see also Mathews v. Eldridge, 424 U.S. 319, 333 (1976). As indicated above, the Federal Rules of Evidence do not apply given the Court's decision to summarily resolve the Bank's Motion on the papers; Orange Bank's hearsay objections are thus inapposite.

690 (N.Y. App. Div. 3d Dept. 2019). Moreover, a guardian ad litem and settlor's wishes are accorded great weight in selection of a trustee. See In re Elsie B, 707 N.Y.S.2d 695 (N.Y. App. Div. 3d Dept. 2000) (permitting guardian ad litem and settlor to add trustees); see also In re Petrocelli 763 N.Y.S.2d 74, 74 (N.Y. App. Div. 2d Dept. 2003) (emphasizing importance of settlor's wishes). The reasonable requests of Rimm as Guardian ad Litem and settlor of the Trust are therefore important interests upon which the Court may rely.

Third, pertaining to the Guardian ad Litem's authority: by consent of all parties, the Court appointed Rimm permanent Guardian ad Litem on August 28, 2008. (See Dkt. No. 139.) The Guardian ad Litem's authority extends to representing Henesy in matters concerning the settlement of the underlying litigation, including the Trust. The Bank's suggestion otherwise is not correct.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 431) filed by nonparty Orange Bank & Trust Co. to vacate the Court's order (Dkt. No. 430) appointing a successor trustee is **DENIED**; and it is further

**ORDERED** that the Court's stay (Dkt. No. 432) of its own order appointing a successor trustee (Dkt. No. 430) be lifted; and it is further

**ORDERED** that the Court's order appointing a successor trustee (Dkt. No. 430) is hereby reaffirmed and reinstated.


**SO ORDERED.**

Dated:    New York, New York
          March 1, 2024

_____
                Victor Marrero
                   U.S.D.J.